**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA *EX REL.* KASOWITZ, BENSON, TORRES & FRIEDMAN LLP,<br><br>    Plaintiff,<br><br>v.<br><br>BASF CORPORATION; ABYER MATERIAL SCIENCE, LLC f/k/a MILES, INC. f/k/a MOBAY CHEMICAL COMPANY; THE DOW CHEMICAL COMPANY; and HUNTSMAN INTERNATIONAL LLC, f/k/a IMPERIAL CHEMICAL INDUSTRIES PLC and f/k/a ICI AMERICAS, INC.<br><br>    Defendants. | Civil Action 1:16-CV-02269-RMC |

**STATEMENT OF INTEREST BY THE UNITED STATES OF AMERICA**
**REGARDING DEFENDANTS' MOTION TO DISMISS**

On December 9, 2016, Defendants BASF Corporation, Covestro LLC (f/k/a Bayer MaterialScience LLC), The Dow Chemical Company, and Huntsman International LLC (collectively, Defendants) filed a motion to dismiss the Amended Complaint filed by Relator Kasowitz, Benson, Torres & Friedman LLP (Relator) [D.E. 110]. On February 14, 2017, Relator filed its brief opposing the Defendants' motion. [D.E. 115]. Pursuant to 28 U.S.C. § 517,[1] the United States submits this Statement of Interest concerning certain portions of the parties' briefs.

**I.   BACKGROUND**

Pursuant to the False Claims Act (FCA), 31 U.S.C. §§ 3729-3733, Relator filed this *qui tam* action on behalf of the United States alleging that Defendants violated the FCA by failing to

---

[1] This provision authorizes the Attorney General of the United States to attend to the interests of the United States in any action in federal or state court.

report to the Environmental Protection Agency (EPA) certain information required by Section 8(e) of the Toxic Substances Control Act (TSCA), 15 U.S.C. § 2607(e). Under TSCA's reporting requirement, Defendants must immediately inform the EPA of "information which reasonably supports the conclusion that [any] substance or mixture [manufactured, processed or distributed by the Defendant chemical companies] presents a substantial risk of injury to health or the environment" unless Defendants had "actual knowledge that the [EPA] has been adequately informed of such information." *Id.*  This reportable information is referred to as "substantial risk information," or "SRI."  The EPA may assess civil monetary penalties of up to $37,500 for each violation for failing to report such information, and each day such failure continues is a separate violation.  *Id.* § 2615(a)(1).[2]  Relator further alleged that, in addition to being statutorily obligated to report SRI, Defendants had entered into agreements with the EPA under a Compliance Audit Program (CAP) in or around 1991.  According to Relator, under the CAP agreements, Defendants agreed to provide all previously unreported SRI in exchange for lower, stipulated penalty amounts; however, Defendants failed to disclose complete SRI under the CAP agreements, and thus violated the agreements.

Relator asserts that the Defendants' conduct violates the "reverse" provision of the FCA, 31 U.S.C. § 3729(a)(1)(G), which holds liable any person who:

> knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government . . . .

---

[2] In 2016, the enacted penalty amount of $25,000 was adjusted for inflation.  *See* 40 C.F.R. § 19.4.

Asserting that the SRI constitutes "property," Relator also claims that the Defendants' conduct violates 31 U.S.C. § 3729(a)(1)(D), which prohibits a person who "has possession, custody, or control of property or money used, or to be used, by the Government" from knowingly "deliver[ing], or caus[ing] to be delivered, less than all of that money or property." *Id.*

On August 19, 2016, the United States declined to intervene in this matter, and as permitted by the FCA's *qui tam* provisions, the Relator continued to pursue the case. *See* 31 U.S.C. § 3730(b)(2) and (b)(4). Although the United States has not intervened and is not a formal party, it remains the real party in interest in this action. *United States ex rel. Eisenstein v. City of New York, New York*, 556 U.S. 928, 930 (2009). The United States has a significant interest in the proper interpretation of the FCA, which plays a central role in the Government's ongoing efforts to combat fraud against the public fisc. *See* S. Rep. No. 345, 99th Cong., 2d Sess. at 34 (1986), reprinted in, 1986 U.S.C.C.A.N. 5266, 5299 (FCA is "the Government's primary litigative tool for combating fraud.").

The parties' briefs raise issues concerning the proper interpretation of the FCA, specifically whether unassessed statutory penalties can be the basis for a reverse FCA violation. Hence, the United States now submits this Statement of Interest to provide the Court with the United States' position on the proper interpretation and application of the reverse FCA provision. In addition, the United States briefly addresses the Defendants' position regarding the knowledge standard under the FCA.

## II. DISCUSSION

### A. Unassessed Statutory Penalties Are Not A Basis For "Reverse" FCA Liability

Liability under the reverse FCA provision requires that the defendant have "an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729 (a)(1)(G). As part of the Fraud Enforcement and Recovery Act of 2009 (FERA), Pub. L. No. 111-21, 123 Stat.

1617, Congress amended the FCA to clarify the definition of "obligation" to address conflicting court decisions interpreting the reverse FCA provision. Sen. Rep. No. 111-10 at 14, 2009 U.S.C.C.A.N. 430, 441 (March 23, 2009). Specifically, FERA was intended to overrule decisions that limited "reverse FCA liability" to circumstances where the defendant's obligation to pay money to the Government was "fixed." *Id.* As Congress explained, an "'obligation' arises across the spectrum of possibilities from the fixed amount debt obligation where all particulars are defined to the instance where there is a relationship between the Government and a person that 'results in a duty to pay the Government money, whether or not the amount owed is yet fixed.'" *Id.* (quoting the United States' brief in *United States v. Bourseau,* 531 F.3d 1159 (9th Cir. 2008)). FERA thus defined "obligation" under the FCA to mean "an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute, or regulation, or from the retention of any overpayment." 31 U.S.C. § 3729(b)(3).

With this background, the issue that arises in this case is whether a violation of Section 8(e) of TSCA creates an established duty to pay money to the Government, such that concealing or failing to comply with the TSCA gives rise to liability under the FCA's "reverse false claim" provision. A recent decision from the Fifth Circuit addressed precisely this question, and held that no such duty or liability arises. *See United States ex rel. Simoneaux v. E.I. duPont de Nemours & Co.*, 843 F.3d 1033 (5th Cir. 2016). The Court agreed with the position set forth in the United States' *amicus curiae* brief that TSCA creates an obligation to report certain information to the EPA and "'obey the law, not an obligation to pay money.'" *Id.* at 1037 (quoting United States' brief). In analyzing section 3729(b)(3), the *Simoneaux* court noted that the FCA "identifies three characteristics of 'obligation[s]': (1) they must be 'established

dut[ies]"; (2) they need not be 'fixed'; and (3) they can arise from a list of sources, including statutes and regulations." *Id.*

In this case, Relator maintains that the *Simoneaux* court misconstrued the FCA's definition of "obligation" and that it is the duty to pay money (or return property) to the Government that need not be fixed under the reverse FCA provision. *See* Rel. Br. at 15. Relator's position, however, ignores "the overwhelming weight of authority" – which FERA left intact – holding that unassessed penalties do not constitute obligations under the FCA. *See Simoneaux*, 843 F.3d at 1037 (collecting cases). In addition, contrary to Relator's assertion, the view that unassessed penalties are not obligations under the FCA "comports with the legislative history of FERA." *Id.* at 1038 (discussing Senator Jon Kyl's explanation of the definition of "obligation" and quoting Kyl's statement that, "'we don't want the Government or anyone else suing under the False Claims Act to treble and enforce a fine before the duty to pay that fine has been formally established'").

Relator's reliance on *3M Co. v. Browner*, 17 F.3d 1453 (D.C. Cir. 1994) is also inappropriate. In *3M,* the Court of Appeals for the District of Columbia Circuit considered whether the EPA's administrative action to assess civil penalties against the defendant under TSCA was timely filed. In analyzing the time for commencing civil penalty proceedings, 28 U.S.C. § 2462, the Court stated that "[b]ecause liability for the penalty attaches at the moment of the violation, one would expect this to be the time when the claim for the penalty 'first accrued.'" 17 F.3d at 1461. This language refers to the timing of when the Government's right to assess a penalty under TSCA would accrue. The *3M* decision does not, as Relator contends, stand for the proposition that the defendant had an obligation to pay the Government money in the absence of the EPA assessing penalties against the company.

Because unassessed penalties do not create an obligation to pay money to the Government, the United States submits that the holding in *Simoneaux* is correct and respectfully requests that this Court find the same.

### B. The Compliance Audit Program Did Not Create An Obligation To Pay Penalties

As a separate basis for reverse FCA liability, Relator asserts that these Defendants were contractually obligated to pay penalties to the EPA for the alleged unreported SRI. *See* Rel. Br. at 44; *see also* 31 U.S.C. § 3729(b)(3) (established duty may arise from "an express or implied contractual . . . relationship"). The Relator points to Defendants' CAP agreements with the EPA; however Relator's contention is based on an erroneous reading of the CAP agreements. The Section 8(e) CAP agreements represented "a one-time voluntary compliance audit program developed to obtain outstanding TSCA section 8(e) data and foster compliance with the statutory obligations of TSCA section 8(e)." 56 Fed. Reg. 49478-02 (Sept. 30, 1991). In essence, the CAP was an opportunity for companies to audit and self-report previously undisclosed, compliant information in exchange for lower stipulated penalties. Under the CAP agreements, companies would neither admit nor deny that the submission of SRI pursuant to the CAP agreement constituted a violation of TSCA, but would agree "to pay a stipulated civil penalty for each study or report" submitted pursuant to the CAP agreement. 56 Fed. Reg. 19514 (Apr. 26, 1991) (modifying Section II.B.4 of the CAP agreement) (attached as Exhibit 27 to the Amended Complaint).[3] As the EPA explained: "submissions under the CAP Agreement will count as one 'prior violation' of 8(e) only." *Id.* at 19515.

---

[3] Relator erroneously asserts that "[e]ach defendant agreed that each piece of SRI submitted under CAP 'constitute[s] a violation of TSCA section 8(e) and 15(3)(b), for which a civil penalty *will be assessed*'" Rel. Br. at 44, citing 56 Fed. Reg. 4129 (Feb. 1, 1991) (attached as Exhibit 26 to the Amended Complaint) (emphasis in original). Relator's citation is to the original Notice published in the Federal Register, which was later modified.

Companies who entered into CAP agreements waived their "right to request a judicial or administrative hearing under TSCA section 18(a)(1)(A) or other provisions of law on any issue of law or fact that has arisen or may arise regarding the application of TSCA section 8(e) *to any study or report submitted pursuant to . . . [the] CAP Agreement.*" 56 Fed. Reg. 19514 (emphasis added). The CAP agreement also provided that, with respect to studies or reports that companies did not disclose under the CAP agreements, but which the EPA later determined were required to be submitted under TSCA section 8(e), the EPA reserved its rights "to take appropriate enforcement action . . . ." Fed. Reg. at 4129. In other words, companies that participated in the Section 8(e) CAP ran the risk of being subject to higher penalties under the regulatory structure of TSCA if they failed to report SRI to the EPA.[4] In short, the CAP agreements did not include any automatic penalty provision for undisclosed SRI. Thus, any failure to disclose SRI under the CAP agreements subjected the Defendants only to unassessed statutory penalties. As discussed above, unassessed penalties do not give rise to reverse FCA liablity.

### C.  Relator Misconstrues the Meaning of "Property" Under the FCA

As an alternative basis for liability under 31 U.S.C. § 3729(a)(1)(G), Relator contends that the SRI itself is property which Defendants had an obligation to transmit to the Government under TSCA. Relator also asserts that Defendants violated 31 U.S.C. § 3729(a)(1)(D) because they "ha[d] possession, custody, or control of property . . . used, or to be used, by the Government and "knowingly deliver[ed], or cause[d] to be delivered less than all of that . . .

---

[4] Relator also erroneously contends defendants waived their rights to challenge or appeal the EPA's assessment of any penalties for information that was not disclosed under the CAP agreements, because this provision created an "automatic liability for contract damages in an amount determined unilaterally by the EPA." Rel. Br. at 44.

property."[5]  Notably, the relator in *United States ex rel. Bahrani v. Conagra, Inc.*, 465 F.3d 1189 (10th Cir. 2006) made an argument similar to the one here.  In *Bahrani*, the relator argued on appeal that the defendant's failure to return original, unaltered USDA export certificates constituted a failure to transmit property to the Government under the reverse FCA provision. *Id.* at 1205.  While refusing to rule on the merits of relator's untimely argument, the Tenth Circuit commented: "had [relator] timely raised such an argument in the district court, we are not convinced that these erroneous certificates constitute the kind of 'property' within the scope of [the reverse FCA provision] . . . and applying the statute in this fashion would stretch it far beyond its intended purpose."  *Id.*

### D. The FCA Does Not Require the Heightened Knowledge Asserted by Defendants

In the event the Court determines that TSCA's penalty structure or the CAP agreement may give rise to liability under the FCA, the United States respectfully submits that Defendants overstate what is necessary to plead knowledge under the FCA.  Defendants assert that, in addition to alleging that each Defendant knew it possessed SRI required to be reported under TSCA Section 8(e) and knew the EPA was not otherwise adequately informed of the unreported information, Relator is required to plead that the Defendants also knew: (1) "that the EPA would have exercised its discretion to allege reporting violations and seek penalties"; (2) "that an ALJ would have imposed such penalties"; (3) that the penalties would have been upheld in two levels of appeal; and (4) that each Defendant "was concealing or improperly avoiding paying those unassessed penalties."  Defs. Br. at 42.  The litany of facts that Defendants contend must be

---

[5] Relator also asserts that the Defendants violated section 3729(a)(1)(D) by failing to deliver the unassessed penalties to the Government. Rel. Br. at 49-50.  For all of the reasons discussed above, the United States respectfully submits that unassessed penalties do not constitute money used, or to be used, by the Government."

alleged in order to plead knowledge are not supported by the plain reading of the relevant liability provisions.

Under section 3729(a)(1)(G), Relator must plead sufficient facts to create an inference that Defendants knew, deliberately ignored, or recklessly disregarded the fact that Defendants had an obligation to the Government and avoided that obligation. *United States ex rel. Harper v. Muskingum Watershed Conservancy Distr.*, 842 F.3d 430, 436 (6th Cir. 2016). Similarly, under section 3729(a)(1)(D), Relator must sufficiently allege facts to create an inference that Defendants knew, deliberately ignored, or recklessly disregarded that they possessed money or property belonging to the Government and that they delivered less than all of that money or property. *Id.* at 439.

Finally, to the extent Defendants contend that a single employee of each Defendant must have knowledge of all the elements of liability, they are incorrect. While the D.C. Circuit has rejected the collective knowledge approach, it has not adopted a "single actor" theory. *United States v. Science Applications Int'l Corp.*, 958 F. Supp. 2d 53, 65 & n. 5 (D.D.C. 2013). In the *SAIC* case, the Court interpreted the FCA's knowledge element to mean that the same employee must "know of the company's non-compliance with a contractual provision and the materiality of that provision" and recognized that this was different than the "single actor theory" that Defendants espouse here. *Id.*

### III. CONCLUSION

For the reasons stated above, the United States respectfully requests that the Court consider the United States' position regarding whether unassessed statutory penalties can be the basis for a reverse FCA violation. In the event the Court determines that TSCA's penalty structure or the CAP agreement may give rise to liability under the FCA, the United States respectfully requests

that the Court consider the United States' position regarding proper pleading of the FCA's knowledge standard.

                                        Respectfully submitted,

                                        CHAD A. READLER
                                        Acting Assistant Attorney General, Civil Division

                                        */s/ Allison Cendali*
                                        MICHAEL D. GRANSTON
                                        SARA MCLEAN
                                        ALLISON CENDALI, D.C. Bar # 468763
                                        Attorneys, Civil Division
                                        United States Department of Justice
                                        PO Box 261, Ben Franklin Station
                                        Washington, DC 20044
                                        Ph: (202) 616-4232
                                        allison.cendali@usdoj.gov

                                        CHANNING D. PHILLIPS, D.C. BAR # 415793
                                        United States Attorney, District of Columbia

                                        DANIEL F. VAN HORN, D.C. BAR # 924092
                                        Civil Chief

                                        /s/ *Jennifer A. Short*
                                        JENNIFER A. SHORT, D.C. Bar # 456884
                                        Assistant United States Attorney
                                        Judiciary Center Building
                                        555 Fourth Street, NW
                                        Washington, D.C.   20530
                                        Ph: (202) 252-2529
                                        jennifer.short@usdoj.gov

March 14, 2017                           Counsel for the United States of America

# CERTIFICATE OF FILING

     I HEREBY CERTIFY that on this 14th day of March 2017, I electronically filed the foregoing with the Court, using the CM/ECF system, and thereby sent notice to all registered counsel, including the following:

| | |
|---|---|
| Daniel R. Benson<br>Kasowitz, Benson, Torres & Friedman, LLP<br>1633 Broadway<br>New York, NY 10019-6799<br>Telephone: (212) 506-1720<br>*Attorneys for Plaintiff-Relator* | Ann M. St. Peter-Griffith<br>Kasowitz, Benson, Torres & Friedman, LLP<br>The Four Seasons Tower<br>1441 Brickell Avenue, Suite 1420<br>Miami, FL 33131<br>Telephone: (786) 587-1054<br>*Attorneys for Plaintiff-Relator* |
| Andrew A. Davenport<br>Kasowitz, Benson, Torres & Friedman, LLP<br>1349 West Peachtree Street NW, Suite 1500<br>Atlanta, GA 30309<br>Telephone: (404) 260-6106<br>*Attorneys for Plaintiff-Relator* | Sotiris A. Planzos<br>Potomac Law Group, PLLC<br>1300 Pennsylvania Avenue, NW, Suite 700<br>Washington, DC 20004<br>Telephone: (202) 204-3005<br>*Attorneys for Plaintiff-Relator* |
| Christopher Landau, P.C.<br>Kirkland & Ellis LLP<br>655 15th Street, NW<br>Washington, DC 20005<br>Telephone: (202) 879-5000<br>*Attorneys for Defendant The Dow Chemical Company* | Alice S. Fisher<br>Anne W. Robinson<br>Latham & Watkins LLP<br>555 Eleventh Street, NW, Suite 1000<br>Washington, DC 20004<br>Telephone: (202) 637-2200<br>*Attorneys for Defendant The Dow Chemical Company* |
| Jeremy M. Feigenbaum<br>Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, NY 10010<br>Telephone: (212) 446-4800<br>*Attorneys for Defendant The Dow Chemical Company* | Steven M. Bauer<br>Latham & Watkins LLP<br>505 Montgomery Street, Suite 2000<br>San Francisco, CA 94111<br>Telephone: (415) 391-0600<br>*Attorneys for Defendant The Dow Chemical Company* |
| Michael Foradas, P.C.<br>Nader Boulos<br>Kirkland & Ellis LLP<br>300 North LaSalle<br>Chicago, IL 60654<br>Telephone: (312) 862-2000<br>*Attorneys for Defendant The Dow Chemical Company* | Seth A. Rosenthal<br>Venable LLP<br>575 7th Street, NW<br>Washington, DC 20004<br>Telephone: (202) 344-4741<br>*Attorneys for Defendant BASF Corporation* |

| | |
|---|---|
| Kyle C. Hankey<br>Bradley Arant Boult Cummings LLP<br>1615 L Street NW, Suite 1350<br>Washington, DC 20036<br>Telephone: (202) 393-7150<br>*Attorneys for Defendant Covestro LLC* | Fred M. Haston III<br>Bradley Arant Boult Cummings LLP<br>One Federal Place<br>1819 Fifth Avenue North<br>Birmingham, AL 35203<br>Telephone: (205) 521-8303<br>*Attorneys for Defendant Covestro LLC* |
| William F. Goodman III<br>Bradley Arant Boult Cummings LLP<br>Roundabout Plaza, 1600 Division Street, Suite 700<br>Nashville, TN 37203<br>Telephone: (615) 252-2381<br>*Attorneys for Defendant Covestro LLC* | Lawrence S. Sher<br>Reed Smith LLP<br>1301 K Street, NW<br>Suite 1000-East Tower<br>Washington, DC 20005<br>Telephone: (202) 414-9200<br>*Attorneys for Defendant Huntsman Int'l LLC* |
| Scott D. Baker<br>Raymond Cardozo<br>Reed Smith LLP<br>101 Second Street, Suite 1800<br>San Francisco, CA 94105<br>Telephone: (415) 543-8700<br>*Attorneys for Defendant Huntsman Int'l LLC* | James L. Sanders<br>Francisca M. Mok<br>Reed Smith LLP<br>1901 Avenue of the Stars, Suite 700<br>Los Angeles, CA 90067<br>Telephone: (310) 734-5200<br>*Attorneys for Defendant Huntsman Int'l LLC* |

/s/
Jennifer A. Short
Assistant United States Attorney
for the District of Columbia